BRETT E. LEWIS (BL6812)
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Brett@iLawco.com.com
Telephone: (718) 243-9323
Facsimile: (718) 243-9326




Attorneys for Plaintiff
ALPHA RECYCLING, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

ALPHA RECYCLING, INC.,

                           Plaintiff,

    -against-

TIMOTHY CROSBY, d/b/a CONVERTER GUYS,
d/b/a CONVERTERGUYS.COM, d/b/a
RECYCLING ALPHA,

                          Defendants.

------------------------------------------------------X

Index No.:

**COMPLAINT FOR
CYBERSQUATTING;
DEFAMATION;
TRADEMARK
INFRINGEMENT; UNFAIR
COMPETITION**

**JURY TRIAL DEMANDED**

Plaintiff Alpha Recycling, Inc., by its attorneys, for its complaint against Defendant Timothy Crosby, d/b/a Converter Guys, d/b/a ConverterGuys.com, d/b/a Recycling Alpha alleges as follows:

### Subject Matter Jurisdiction and Venue

1. This is an action for cybersquatting under 15 U.S.C. § 1125(d); for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); for defamation under New York common law; and for unfair competition under New York common law. This

Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, and 1338.

2. This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim and the threatened and actual harm to Plaintiff occurred in this District by reason of Defendants' conduct as alleged below. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1391(d) because Defendants are aliens.

### Parties and Personal Jurisdiction

4. Plaintiff Alpha Recycling, Inc., ("Alpha") is a New York corporation with its principal place of business located at 1641 E. 233 Street, Bronx, New York, 10466.

5. Defendant Timothy Crosby ("Crosby"), d/b/a The Converter Guys, d/b/a ConverterGuys.com, d/b/a Recycling Alpha is an individual residing in Vermont, with a principal place of business at 2307 West Hill Road, Townshend, VT, 05353.

6. Defendant Crosby is working together with the Converter Guys, ConverterGuys.com, and Recycling Alpha as a single entity, (collectively, "Defendants"), and in collusion with each other, for the purpose of perpetrating the unlawful activities complained of in this Complaint.

7. Upon information and belief, The Converter Guys is an unregistered d/b/a, with a

principal place of business at 2307 West Hill Road, Townshend, VT, 05353.

8. ConverterGuys.com is an inactive trade name initially registered by Defendant Crosby in the State of Vermont, with an address of 3700 State Forest Road, Townshend, VT, 05353.

9. "Recycling Alpha" is a trade name registered by Defendant Crosby in the State of Vermont on or about February 4, 2013, with an address at 2307 West Hill Road, Townshend, VT, 05353.

10. At all times material to this action, each of Defendants was the agent, servant, employee, partner, alter ego, subsidiary, or joint venture of the other Defendant, and the acts of each Defendant were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Defendants acted with the knowledge, permission, and the consent of the other Defendant; and each Defendant aided and abetted the other Defendant in the acts of omissions alleged in this Complaint.

11. Defendants are subject to the jurisdiction of this Court by virtue of having transacted significant business in this judicial district related to the causes of action presented. Defendants further subjected themselves to this Court's jurisdiction by invoking the benefits and protections of this State in an attempt to cause harm within the State of New York. Their false and defamatory complaint, dated April 26, 2014, filed with RipoffReport.com, which called Plaintiff a "Rip-off and Thief," mentioned Plaintiff's address in the Bronx, New York, and included the words "BRONX" and "NEW YORK," no fewer than seven times. Upon information and belief, Defendants did this to optimize search engine results so that individuals searching for Plaintiff at Plaintiff's New York address would see Defendants' false and defamatory Ripoff Report complaint, thus

causing Plaintiff harm in New York. Defendants also willfully infringed Plaintiff's trademarks, which infringement caused harm to Plaintiff within the State of New York. Thus, personal jurisdiction over Defendants is also proper in New York pursuant to New York Civil Practice Law and Rules § 302(a).

## Background

12. Alpha is a leader in the field of recycling catalytic converters and scrap metal, and is highly recognized in the local, national and global market. Alpha serves everyone from individual customers to large sellers. Alpha buys and sells both ferrous and nonferrous metals, with a focus on catalytic converter recycling.

13. Alpha is one of the fastest-growing businesses in the industry, and is committed to giving its customers the best price for their catalytic converters and scrap metals.

14. Alpha, along with its sister companies, processes over 150,000 converters monthly, with steadily increasing numbers. Alpha's volume allows it to pay highly competitive prices. Rather than pay a commission based on profit margin per individual converter, Alpha pays its buyers commission based on volume.

15. Alpha partners with some of the world's best metal companies in the United States and abroad. This, combined with Alpha's generations of experience and professional staff, gives Alpha the knowledge and contacts to obtain among the highest market prices for its recycled metals.

16. Since its inception in 2007, Alpha has had gross revenues in the hundreds of millions of dollars, and has spent hundreds of thousands of dollars on advertising and marketing the ALPHA™ trademark (the "ALPHA™ Mark"). Gross revenues in 2013, alone, exceeded $86 million.

17. Alpha does business all over the United States, with the majority of its sales coming from the following states: Connecticut, New York, New Jersey, New Hampshire, Vermont, Pennsylvania, Maryland, Delaware, Massachusetts, Ohio, and the District of Columbia (the "Territory"), so that consumers have come to associate the ALPHA™ Mark with Plaintiff. Alpha has done business with over 10,000 customers across the United States.

18. Alpha also attends industry trade shows multiple times a year, including, but not limited to, those by the Institute of Scrap Recycling Industries, Inc. ("ISRI") and International Precious Metals Institute ("IPMI"), distributes promotional products with the ALPHA™ Mark – such as t-shirts, sweatshirts, coffee mugs and pens – among prospective customers, and sends sales representatives to visit muffler shops, repair shops, towing companies, and scrap yards within the Territory.

19. Moreover, Plaintiff relies upon word-of-mouth recommendations from many of its current customers, thus its reputation is of utmost importance.

20. As a result of the foregoing activities, Plaintiff's ALPHA™ Mark has come to be well-known and has acquired secondary meaning through widespread and continuous use in commerce.

21. On or about July 16, 2010, Plaintiff registered the <AlphaRecyclingUS.com> domain name (the "Domain Name") in connection with the marketing and promotion of Plaintiff's services.

22. Alpha operates the Web site located at www.AlphaRecyclingus.com (the "Alpha Site"), which receives hundreds of visits, annually. Alpha regularly purchases Google Ad Words to drive consumers to the Alpha Site, and also advertises in magazines, including Power Source Recycling.

**The Defendants and Their Wrongful Conduct**

23. On or about January 31, 2012, several months after Defendants started doing business with Plaintiff, Defendants registered the domain name <AlphaRecyclingUS.net> (the "Infringing Domain"), which is identical to Plaintiff's Domain Name, with the exception of the ".net" top-level domain or "TLD".

24. Defendants' registration of the Infringing Domain was not authorized by Plaintiff. At the time of registration, Defendants were not known by the name "Alpha Recycling" or "Alpha Recycling US." Rather, Defendants went by the trade name and unregistered d/b/a, "The Converter Guys." The Converter Guys trade name is currently listed as "inactive" by the State of Vermont.

25. On or about February 4, 2013, over a year after registering the Infringing Domain, Defendants registered the trade name "Recycling Alpha" in the State of Vermont, in an effort to trade off the goodwill associated with Plaintiff's APLHA™ Mark and business.

26. Defendants, who operate a competing catalytic converter recycling business, use the Infringing Domain to display Defendants' competing Converter Guys Web site, with the intention of confusing consumers and siphoning off users looking for Plaintiff's Alpha Site.

27. At the time that Defendants registered the Infringing Domain Name, Defendants were customers of Plaintiff's, and were fully aware of Plaintiff's ALPHA™ Mark.

28. From on or about November 2011 to December 2012, Defendants sold used catalytic converters to Plaintiff. During such time, Plaintiff was not aware that Defendants had registered the infringing Domain and were pointing it to their competing Web site.

29. Plaintiff paid Defendants approximately $226,000 in 2011 and $1,730,000 in 2012 for

used converters and scrap metal.

30. Defendants signed tally sheets, listing the types and quantities of catalytic converters purchased, and the amounts of money paid to Defendants.

31. At no time did Defendants ever complain that the numbers on the tally sheets were somehow inaccurate, or that Plaintiff had "cheated," "failed to mark," or "mis-marked" the tally sheets. Indeed, Defendants were participants in the tally process, and signed most of the tally sheets, confirming their accuracy.

32. Defendants were paid for all converters and scrap metal in accordance with the numbers in the tally sheets – which numbers Defendants did not contest.

33. Defendants deposited every check and accepted every wire transfer made by Plaintiff in payment for Defendants' scrap metals.

34. In or around December 2012, after one of Plaintiff's buyers caught Defendants trying to unload sub-standard and sorted catalytic converters on Plaintiff, Plaintiff terminated its business relationship with Defendants.

35. In or around December 2013, Defendant posted a review of Plaintiff on Google. Defendant gave Plaintiff one star, stating: "Do not do business with these scumbags they ripped me off…they act like they are marking my converter and they don't. these scumbags rip people off all the time. . sellers beware."

36. Upon information and belief, in or about March 16, 2014, Defendants posted a video to YouTube with the title, "Alpha Catalytic Converter Recycling Experts" (the "Infringing Video"). When a user clicked on the Infringing Video, a commercial for The Converter Guys was displayed. Defendants used the terms "Alpha" and "Recycling" in the title, along with "Bronx, NY," to confuse users in an effort to trade off of the good will and

notoriety of the ALPHA™ Mark.

37. In April 2014, one of Plaintiff's sales representatives, Iga Wolotowski, visited with a number of auto-mechanics, repair shops, towing companies, and scrap yards in Vermont with the intention of procuring customers from whom to purchase used catalytic converters.

38. Shortly after, on April 25, 2014, Plaintiff received a phone call from Defendant Crosby, inquiring about who Ms. Wolotowski was and what she was doing. During this call, Defendant Crosby complained that Plaintiff's "prices were very high." When informed as to the purpose of Ms. Wolotowski's trip, Defendant Crosby sarcastically responded "Oh, good" and "great."

39. Shortly thereafter, on or about April 26, 2014, Defendants posted a false and defamatory complaint against Plaintiff with the Web site RipoffReport.com. Among other claims, the Ripoff Report complaint accuses Plaintiff of, "ripping off scrap yards, towing companies, and repair shops," and calls Plaintiff a "thief."

40. The complaint also accuses Plaintiff of, "cheating on the pad by not marking or mis marking [sic] the pad," and of "not grad[ing] the converters properly so that they can use those unrealistic numbers."

41. Defendants further accuse Plaintiff of, "using a hot girl" as "BAIT," and states that Plaintiff and its employees, "lie, cheat and essentially steal your precious metals."

42. Defendants further claimed that Plaintiff's buyer had admitted to the above allegations.

43. Defendants then encouraged readers that, "[i]f you have a hard time believing this report you can contact me and with any city on the east [sic] coast I can give you a reference . . . that will back up and agree with what I am saying."

44. The above statements are knowingly and materially false, and were made to defame Plaintiff and divert Plaintiff's customers to Defendants.

45. Upon information and belief, after posting the false and defamatory complaint on Ripoff Report, Defendants changed the title of the Infringing Video to "Catalytic Converter Recycling IN THE BRONX NEW YORK." When a user searches for the original title of the Infringing Video that included Plaintiff's ALPHA™ Mark, the same Infringing Video appears at the top of search engine results, except with the modified title. Upon information and belief, Defendants changed the title but kept up the Infringing Video to hide their infringing and confusing activities from the Court, while soliciting customers in New York and diverting customers from Plaintiff.

46. On or around the same date as the Ripoff Report complaint, Defendants posted an identical, false and defamatory complaint on the Web site Scamorg.com.

## FIRST CAUSE OF ACTION

### [Cybersquatting Under 15 U.S.C. § 1125(d)]

47. Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth here.

48. Plaintiff is informed and believes, and on that basis alleges, that Defendants registered and is using the Infringing Domain with the bad faith intent to profit off of Plaintiff's ALPHA™ Mark.

49. Defendants were customers of Plaintiff's at the time that they registered the Infringing Domain and were aware of Plaintiff's trademark rights.

50. Users who type the Infringing Domain into their Web browsers are directed to Defendants' competing Converter Guys Web site. Using a domain name that is virtually

identical to a competitor's trademark to redirect users to a competing Web site is quintessential bad faith.

51. The ALPHA™ Mark was distinctive and entitled to protection as a common law trademark at the time that Defendants registered the Infringing Domain.

52. The ALPHA™ Mark was distinctive and entitled to protection as a common law trademark at the time that Defendants used the Infringing Domain.

53. Defendants' bad faith registration and use of the Infringing Domain is part of a pattern of bad faith – Defendants also used Plaintiff's trademark to lure users to watch its You Tube video, and posted reviews that were defamatory of Plaintiff on Ripoff Report, Scamorg.com and Google.

54. Defendants also registered the misleading trade name "Recycling Alpha" in Vermont on February 4, 2013; however, upon information and belief, Defendants have never been known as or used "Recycling Alpha" in connection with the offering of any services, but used the ALPHA™ Mark in bad faith to trade off the goodwill associated with Plaintiff's business and Plaintiff's ALPHA™ Mark.

55. The ALPHA™ Mark and the Infringing Domain are virtually identical – only the geographic identifier "US" separates them. The Domain Name and the Infringing Domain are virtually identical to each other, with only the TLD being different—i.e., ".com" v. ".net".

56. Plaintiff is informed and believes and on that basis alleges that Defendants registered, trafficked in, or used the Infringing Domain in bad faith and with a bad faith intent to profit from the goodwill long established by Plaintiff in the ALPHA™ Mark.

57. Plaintiff is informed and believes and on that basis alleges that Defendants registered,

trafficked in, or used the Infringing Domain in bad faith and with a bad faith intent to prevent Plaintiff from registering its trademark in a domain name, and to harm the goodwill established by Plaintiff in the ALPHA™ Mark.

58. Defendants do not have any intellectual property rights or any other rights in the ALPHA™ Mark.

59. Plaintiff is informed and on that basis alleges that the Infringing Domain does not consist of the legal name of any of the Defendants, nor a name that is otherwise commonly used to identify any Defendants.

60. Plaintiff is informed and on that basis alleges that Defendants have not made any prior use of the Infringing Domain in connection with a *bona fide* offering of any goods or services.

61. Plaintiff is informed and on that basis alleges that Defendants have not made any *bona fide* fair use of the ALPHA™ Mark on a website accessible under the Infringing Domain.

62. Plaintiff is informed and on that basis alleges that Defendants registered and used the Infringing Domain to divert customers from Plaintiff's website to a website accessible under the Infringing Domain, with the bad faith intent to profit off of Plaintiff's good will.

63. Defendants' registration, use, or trafficking in the Infringing Domain constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiff to relief.

64. By reason of Defendants' acts alleged herein, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

65. By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover Defendants'

profits, actual damages and the costs of action, or statutory damages under 15 U.S.C. § 1117, on election by Plaintiff, in an amount of one hundred thousand dollars ($100,000) per domain name infringement.

66. This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### [Common Law Defamation and Trade Libel]

67. Plaintiff realleges and incorporates by reference Paragraphs 1 through 44 as though fully set forth here.

68. Defendants have intentionally posted knowingly false statements about Plaintiff on at least several websites, including Ripoff Report, Scamorg.com and Google.

69. These statements were made maliciously and willfully, and were intended to cause harm to Plaintiff's business and reputation.

70. Among other statements, Defendants falsely accused Plaintiff of: "ripping off scrap yards," "cheat[ing] on the pad," "not marking or mis-marking the pad," "not grad[ing] the converters properly," and that, "they lie, rob, cheat, and essentially steal."

71. These statements were false, and were published to third parties in this district and across the Internet.

72. Upon information and belief, the Ripoff Report and Scamorg.com complaints are permanent – they cannot be withdrawn by Defendant, only de-indexed from search engines. These sites will not remove a complaint under any circumstances, once filed, not even in response to a court order.

73. As a result of Defendants' acts, Plaintiff has suffered irreparable damage to its reputation

and further damages in the form of lost sales and profits, in an amount to be determined at trial.

74. As a result of the willful and malicious nature of the defamation, Plaintiff is entitled to punitive damages.

### THIRD CAUSE OF ACTION

### [Unfair Competition]

75. Plaintiff realleges and incorporates by reference Paragraphs 1 through 44 as though fully set forth here.

76. Defendants registered and are using the Infringing Domain to divert users searching for Plaintiff to Defendants' competing Web site.

77. Defendants posted false and defamatory complaints about Plaintiff online.

78. Upon information and belief, Defendants knew that Google displays Ripoff Report and Scamorg.com search results to users searching for the companies named in those complaints, which results are highly ranked, and that such a complaint would harm Plaintiff's reputation and business in this district and elsewhere.

79. Upon information and belief, by posting its name, "ConverterGuys" in the complaint, and by offering to speak to Plaintiff's customers and potential customers about Plaintiff's alleged wrongdoing, Defendants intended to use their defamatory complaints as a means to generate business by turning customers away from Plaintiff, and redirecting them to Defendants.

80. Defendants posted a video on YouTube using Plaintiff's ALPHA$^{TM}$ Mark, and listing Plaintiff's Bronx, NY address, with the intent of conveying a false source, affiliation, or sponsorship with Plaintiff's mark and services.

81. These acts and others stated above constitute a pattern of common law unfair competition, entitling Plaintiff to the recovery of compensatory and punitive damages.

## FOURTH CAUSE OF ACTION

### [Infringement of Unregistered Trademark, 11 U.S.C. § 1125(a)]

82. Plaintiff realleges and incorporates by reference Paragraphs 1 through 44 as though fully set forth here.

83. The ALPHA™ Mark has acquired distinctiveness and secondary meaning in connection with its recycling services, by virtue of its extensive use by Alpha in connection with the recycling of catalytic converters and other scrap metals, and is a protectable trademark of Alpha.

84. Defendants' use in commerce of Plaintiff's ALPHA™ Mark is likely to cause confusion, mistake or to deceive.

85. The above-described acts of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

86. Defendants have unfairly profited from the trademark infringement alleged.

87. By reason of Defendants' acts of trademark infringement, Plaintiff has suffered damages to the goodwill associated with its ALPHA™ Mark.

88. Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff.

89. Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, who has an interest in being free from confusion, mistake, and deception.

90. By reason of Defendants' acts of trademark infringement, Plaintiff's remedy at law is not

adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

91. Defendants' acts of trademark infringement are willful and Plaintiff is entitled to damages, and that those damages be trebled under 15 U.S.C. § 1117.

92. This is an exceptional case, making Plaintiff eligible for an award of attorney's fees under 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants awarding Plaintiff:

1. statutory damages for cybersquatting in the amount of $100,000;

2. transferring the Infringing Domain to Plaintiff;

3. actual damages in an amount to be determined at trial, but in no event less than $1,000,000, due to commercial defamation and trade libel, and an order directing Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to remove, delete, or otherwise disable such posts;

4. actual damages in an amount to be determined at trial, but in no event less than $1,000,000, due to unfair competition;

5. actual damages in an amount to be determined at trial, but in no event less than $1,000,000, due to common law trademark infringement;

6. exemplary or punitive damages in an amount appropriate to punish Defendants and to make an example of Defendants to the community;

7. a Permanent Injunction enjoining and restraining Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from copying, reproducing, manufacturing, duplicating, disseminating, distributing, or using Plaintiff's ALPHA™ Mark, including in connection with any domain name; and

8. a Permanent Injunction enjoining and restraining Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from disparaging or otherwise posting defamatory comments about Plaintiff;

9. That the Court issue an Order at the conclusion of the present matter directing Defendants to undertake such remedial efforts as the Court deems necessary to restore Plaintiff's reputation;

10. attorney's fees and costs; and

11. such other relief as the Court deems just and equitable under the circumstances.

Dated: Brooklyn, New York
July 2, 2014

Respectfully submitted,

Lewis & Lin, LLC

_____
Brett E. Lewis
Attorneys for Plaintiff
Alpha Recycling, Inc.

## DEMAND FOR TRIAL BY JURY

Please take notice that Plaintiff, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands trial by jury for all issues so triable.

Dated: July 2, 2014.

Respectfully submitted,

Lewis & Lin, LLC

Brett E. Lewis
Attorneys for Plaintiff
Alpha Recycling, Inc.